The second case for this morning is Wang v. Lynch. Mr. Ma. Good morning, Your Honours. My name is Kim Chin Ma for the Petitioner. Your Honours, in this case, we ask this Court to overturn the findings of the lower tribunals regarding frivolous filing. In this case, clearly, both the immigration judge and the BIA erred in making a finding that my client, the petitioner, filed the application, filed a frivolous application. The basis of the finding is a medical record. The judge specifically mentioned that he thought the medical record was fabricated. Then, a very critical element of the application is fabricated based on that finding. But the basis, the reasoning of the judge is that the medical record was not filed until prior to the hearing. I don't think that's a justifiable conclusion because the rules of the Court is that you can file any evidence 15 days prior to the merit hearing. That was what the petitioner did. Now, we're talking about the December 28, 2009 medical record? Right. Okay. Right. And also, the medical records show a different date and a different injury than what was claimed by the petitioner. But the petitioner explained the discrepancies. He thought that his mother must have sent a wrong medical record. He stated that he was treated at different hospitals, different health facilities, and the dates were close. And the dates were close to the claimed injuries. He explained that if the date was wrong or the facility was wrong, was different from what was claimed, that his mother sent the wrong medical record. And also, the injuries were similar. And there is no evidence. There is no evidence in the record that anybody fabricated that document. But the judge jumped to the conclusion that that document was fabricated. We have no clue how the judge came to that conclusion. And basically, the judge repeatedly mentioned the inconsistencies of his testimony, between his testimony and the medical records, the documentation, and also the inconsistency within his own testimony. These are things like the difference between the village health department and the hospital, or how many police officers were around, and so forth. Right. And he explained that he said 10, 17. It is impossible for a young man to accurately state the number of police officers who came to the scene. And also, because he received treatment at different locations. And if there is any description, it's not indication of fabrication. And also, the inconsistencies. The court should not have come to the conclusion that the finding was frivolous because of inconsistencies. The petition may have testified inconsistently, but there is no evidence that he fabricated anything. He received his documentation from his parents. And also, the judge also said, oh, you lacked supporting documents that you practiced religion in China. But he has a letter from his parents saying that he was practicing the Christian religion, and because of that, he was detained, he was injured. And also, the judge also claims that there was no evidence here in the United States supporting his claim of practicing religion in this country. But he did have a letter submitted by a friend or a church member to show that he was still practicing. But we request that this court should overturn the frivolous finding and also to review the credibility finding as well. And he testified to the details of the mistreatment and also the dates. And also, on two occasions, the gathering was interrupted by the police. He was injured in the first occurrence. And also, he was detained in the second and mistreated during his detention. You're into your rebuttal time. You're into your rebuttal time. Okay. Thank you. All right. Thank you, Mr. Ma. Mr. Nelson. Good morning. May it please the court. My name is Aaron Nelson for the respondent, the Attorney General. It sounds from the tenor of Mr. Ma's comments as though he's conceding that this case is filled with credibility problems. And as we point out in our brief, indeed, it is riddled with credibility problems. And I won't spend time on the small minutiae of those. But I do want to address a couple of points that we believe are falsehoods that both support the credibility finding, the adverse credibility finding, and also support the implementation of the finding of a frivolous asylum application. So you're not taking a position as a matter of law that a credibility finding can't be reviewed by this court. I assume you're just saying it's a high bar. Indeed. It's a high bar. But we can review it. I just wrote down Mr. Ma's statement that the petitioner may have testified inconsistently. And then I have an ellipsis. So that's my starting point. And I would like to emphasize two or three points from the record, from this case. Right. Because, of course, every inconsistency doesn't matter. He's testifying probably in 2011, if not after, and testifying about things that happened two years ago. So if he had just said both times a lot of police officers, you wouldn't have worried about whether it was 10 or 17, I assume. Yes, Your Honor. Indeed, I... That seems completely trivial to me. I respect that, that you find that trivial. And in the post-Real ID Act world, you know, we believe, our position is that any inconsistency may form the basis of an adverse credibility finding. But it doesn't have to. But I'm not anchoring it on 10 versus 17. So we can eliminate that one, at least. What I would, if I may, direct the Court's attention to centers on the factual contention that Petitioner made in his written statement of 2011, which was signed and notarized. In which he said, regarding the March 2010 alleged incident, that he was tortured again and again. And that he received, from the beatings he received, he had a cerebral concussion. Now this is a bedrock sort of factual contention for his overall claim. But when he's asked about this cerebral concussion by the immigration judge, he says, no, that wasn't true. So for us, that is a major falsehood. So why doesn't, I mean, doesn't this get down to this December 28, 2009 case record? Because the copy of that in the record, in translation at least, I'm certainly not going to read the Chinese. But where it says, diagnose opinion, one, light brain concussion. And then there's various medications, rest for a week, and so on. So if he's just got the year wrong, you know, he remembers at some point he got a brain concussion. Is that really fatal? We would say that it is fatal. Do you remember everything that the doctors have written down about you two years ago? Best answer is you never went to a doctor in your life. Maybe so. That's great. Never encountered it. All right. Seems implausible to me. Well, this is not a routine examination of one's medical records. This is in the context of a claim that he was beaten on two occasions, separated by three or four months. And the written statement is made about a year after the last one. Right. And he says he got a concussion. I mean, we read a lot about concussions these days. I guess, you know, the NFL, it turns out they're all getting concussions and other things. So I'm not sure that people know that they have a concussion without a doctor telling them. Well, fair point. But he presented that as a factual sort of underpinning of his claim. Right. And we have a medical record that says he got one. Maybe the dates are a little off. Well, the dates are off. I'll then turn to this December 28, 2009 medical record, if Your Honor thinks that that's sort of the linchpin of this case. He's asked in a non-confrontational way about the one medical record that he presents. Now, he claims otherwise that the incident in December happened on December 20th. The medical record is dated December 28th. And when he's asked about it, he immediately starts talking about having been detained. And they beat me every day in detention. And as soon as I was out of detention, I proceeded for treatment. And the immigration judge says, were you detained in 2009? No, I wasn't detained in 2009. So he's asked about the medical record that he tendered into evidence just two weeks prior. One would expect that with the aid of counsel, and he's been represented throughout this whole time, that he should be familiar with his own evidence. And he immediately starts talking about the 2010 incident. So upon further examination, we would submit that his entire credibility crumbles around the December 28th medical record. In that, he is questioned about treatment he received. So after he testifies that he received treatment after having been detained, which is not the case, not supported in other parts of this record, the immigration judge says, well, did you receive treatment on December 20th and December 28th? And he says, oh, yes, I did. And then he says that he went to a local clinic, and what they gave him didn't work. And a week later, he went to a large hospital. But he affirmatively says, I didn't receive any documentation from the local clinic. But the record in question is the document from the local clinic. It's not from the larger. It's from the Wenxin Jin Health Department, right? Correct. So when the more he talks, he can't tell us a straight story. This record is thin. The documentary evidence that he presents is not voluminous. It was presented two weeks prior to his merits hearing. So one presumed he would have familiarity with it. And when he tries to explain that evidently maybe there were three medical records, he only presented one. He said two different things. One, he said, oh, I did ask for the other, whichever other he was referring to. They mailed it, but it must have gotten lost in the mail. And the other thing he said was, my mother sent the wrong record. And he then goes on a tale of an explanation of why his mother sent the wrong record, was because when he was in high school, he had a tendency to get in fights. And he got in a fight one day, and the headmaster told his mother to come pick him up. And she rushed to come pick him up and was in a car accident. I mean, it goes, you know, it's just laughable. I take this seriously, but it's a laughable explanation that she was in a car accident, and she had some neurological surgeries. And since that time, she has problems. That's why I can't tell you a straight story about a medical record that says, patient presents on December 28th at 9, 10 in the morning with dizziness, vomiting. It says that he was in a fight one hour previous and is diagnosed with a light concussion. So that December 29, 2009 medical record, we would contend, unravels all of his credibility. And because there's so little in this record, and this would otherwise be one of the pillars of his claim of having been persecuted, we believe that it duly supports the finding that he frivolously, he filed a frivolous asylum application. I've already mentioned the 2010, the claim regarding the 2010 that he, when he's asked about it, he says, no, that's not true, that we believe also is another fabrication and falsehood. And the last point that I would raise is the letter purportedly written by his father from his parents, which starts out, you know, evidently written by, supposedly written by his father. I'm a pious Christian, so in the name of Jesus Christ, everything I say here is true. He then goes on to say in this letter that his son, he wants his son to escape the persecution in China to a big Christian country where people like us who are Christian won't be persecuted. Well, when petitioner is asked, is your father a Christian? He says, no, he's not a Christian. So that unravels that. And in that same letter, his father says, after the 2010 incident, he was surveilled, he was hounded, he was beaten to the point of having broken bones. To a bone fracture, yeah. And he was asked, petitioner says, did you suffer broken bones? And he said, no, I didn't. And his explanation is, you know, maybe my father exaggerated a little bit. Well, I think a broken bone, you know, there's gradations and there's shading and then there's complete fabrication and we believe that this case is one. And lastly, I would say that there's no compelling evidence really to overturn the findings, the factual findings below. And we'd appreciate that. Thank you. All right. Thank you very much. Anything further, Mr. Ma? Yes. Your Honor, the question, the issue comes to whether there was any fabrication on the part of this young man. I would phrase it a little bit differently. I would say it's whether a rational immigration judge could so conclude. You know, obviously, you're drawing inferences from a record. And different people may draw different inferences, but the reason we have a deferential standard of review is that we, in a sense, give the benefit of the doubt to the original fact finder. But the fabrication, by definition, has to be deliberate and it has to be done by the petitioner, by the party, not other people. What happened to the other medical record, we don't know. And he explained why can't the immigration judge draw the inference that he's not being candid or at a minimum draw the inference that the evidence isn't sufficient to support the claim of persecution. That's a softer finding that might leave this result in place and focus on the privileges. Okay. Our position is stated in our brief, and we request that this court review the record and the decision carefully and overturn at least the finding of frivolousness. Thank you so much. All right. Thank you very much, Mr. Ma. Thanks to the government. We'll take the case under advisement.